BRYAN SCHRODER
United States Attorney

ADAM ALEXANDER
Assistant United States Attorney
Federal Building & U.S. Courthouse
222 West 7th Avenue, Room 253
Anchorage, Alaska 99513-7567
Phone: (907) 271-5071
Fax: (907) 271-1500
Email: adam.alexander@usdoj.gov

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No. 3:20-cr-00077-JMK-DMS |
| | ) | |
| Plaintiff, | ) | |
| | ) | **PLEA AGREEMENT** |
| vs. | ) | |
| | ) | |
| JAMES AARON STEVENS, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**Unless the parties jointly inform the Court in writing of any additional agreements, this document in its entirety contains the terms of the plea agreement between the defendant and the United States.  This agreement is limited to the District of Alaska; it does not bind other federal, state, or local prosecuting authorities.**

# I. SUMMARY OF AGREEMENT, FEDERAL RULE OF CRIMINAL PROCEDURE 11

## A. Summary of Agreement

The defendant agrees to plead guilty to the following count of the Information in this case: Count 1 - Lacey Act Felony (false labeling), in violation of 16 U.S.C. §§ 3372(d)(2), 3373(d)(3)(A)(ii) and 18 U.S.C. § 3571(d). The defendant agrees to pay a fine of $1,000,000 by the date of sentencing pursuant to 18 U.S.C. § 3571(d), but understands that the United States is free to seek a fine up to the statutory maximum as detailed herein. The defendant also agrees to recommend a sentence of no less than one year and one day imprisonment and three years' supervised release under the special conditions described herein in Section D. The United States agrees not to prosecute the defendant further for any other offense related to the events that resulted in the charge(s) contained in the Information, and the National Oceanic and Atmospheric Administration (NOAA) agrees that it will not initiate any civil administrative enforcement action or proceeding against the defendant for any violation related to the events that resulted in the charge(s) contained in the Information.

The defendant will waive all rights to appeal the convictions and sentence imposed under this agreement. The defendant will also waive all rights to collaterally attack the conviction(s) and sentence, except on the grounds of ineffective assistance of counsel or the voluntariness of the plea(s).

**B.     Federal Rule of Criminal Procedure 11**

Unless the parties otherwise inform the Court in writing, Federal Rule of Criminal Procedure 11(c)(1)(A) and (B) will control this plea agreement.  Thus, the defendant may not withdraw from this agreement or the guilty plea(s) if the Court rejects the parties' sentencing recommendations at the sentencing hearing.

## II.     CHARGE(S), ELEMENTS, FACTUAL BASIS, STATUTORY PENALTIES AND OTHER MATTERS AFFECTING SENTENCE

**A.     Charge(s)**

**1.     The defendant agrees to plead guilty to the following count(s) of the Information:**

Count 1:  Lacey Act Felony (false labeling), a violation of 16 U.S.C. §§ 3372(d)(2), 3373(d)(3)(A)(ii) and 18 U.S.C. § 3571(d).

**B.     Elements**

The elements of the charge in Count 1 to which the defendant is pleading guilty are as follows:

**1.**     The defendant knowingly made or submitted a false record concerning, account concerning, or label for, or any false identification of, fish;

**2.**     The fish had been or were intended to be transported in interstate or foreign commerce; and

**3.**     The defendant's making or submission of a false record, account, or label for, or false identification of, fish involved the sale or purchase

of, offer of sale or purchase, or commission of an act with intent to sell or purchase, fish with a market value greater than $350.

## C. Factual Basis

The defendant admits the truth of the allegations in Count 1 of the Information and the truth of the following statement, and the parties stipulate that the Court may rely upon this statement to support the factual basis for the guilty plea(s) and for the imposition of the sentence:

1. Between on or about 2014 and 2017, within the District of Alaska and elsewhere, the defendant, James A. STEVENS, knowingly made and/or submitted false records concerning the location(s) and/or regulatory area(s) [1] where fish were harvested during 26 fishing trips in violation of Title 16, United States Code, Sections 3372(d)(2) and 3373(d)(3)(A)(ii), as well as Title 18, United States Code, Section 3571(d). **STEVENS' false records related to approximately 903,208 pounds of individual fishing quota (IFQ) halibut and IFQ sablefish with a total approximate dock value of $4,522,210 and a market value of approximately $13,566,630.** The fish caught during these trips were intended to be transported and were transported in interstate and/or foreign commerce, all of which is in violation of Title 16, United States Code, Sections 3372(d)(2) and 3373(d)(3)(A)(ii), as well as Title 18, United States Code, Section 3571(d).

---

[1] The regulatory areas for sablefish, are distinct from the regulatory areas for Pacific halibut. *See*, 50 C.F.R. Part 679, figs. 14 and 15. As relevant here, regulatory areas 3A and 3B pertain to Pacific halibut, while regulatory areas Western Gulf of Alaska (WG), Central Gulf of Alaska (CG), and West Yakutat (WY) pertain to sablefish.

U.S. v. JAMES AARON STEVENS

2.      Between on or about June 9 and June 20, 2014, STEVENS falsified the F/V ALASKAN STAR's International Pacific Halibut Commission (IPHC) logbook by stating that seven sets of fishing gear were deployed in regulatory area (area) 3B, when the actual halibut fishing occurred in area 3A.  Additionally, STEVENS falsified the IFQ halibut landing reports and Alaska Department of Fish and Game Fish Ticket (Fish Ticket) to reflect the halibut were harvested in area 3B, when the actual halibut fishing occurred in area 3A.  STEVENS also falsified two IFQ sablefish landing reports and the Fish Ticket to show IFQ sablefish were harvested in area Western Gulf (WG) and Central Gulf (CG), when in fact all the sablefish were harvested in area CG. During this period, STEVENS knowingly falsely recorded the regulatory area where approximately 12,931 pounds ($81,760.56) of IFQ halibut and 33,992 pounds ($120,714.01) of IFQ sablefish were harvested.

3.      Between on or about August 24 and August 31, 2014, STEVENS falsified the F/V SOUTHERN SEAS' Daily Fishing Logbook (DFL) by  stating two sets of gear were deployed in area 3B, when the vessel was never in area 3B, and by falsely stating six sets of gear were deployed in area 3A in locations where the vessel did not fish. In addition, STEVENS falsified one IFQ halibut landing report and Fish Ticket to show the halibut were harvested in area 3B, when all halibut were harvested in area 3A. STEVENS falsified three other IFQ halibut landing reports to reflect a statistical area in which halibut were not harvested and omitted a statistical area in which halibut were harvested. STEVENS also falsified the IFQ sablefish landing report and Fish Ticket to reflect a statistical area in which IFQ sablefish were not harvested. During this period, STEVENS

U.S. v. JAMES AARON STEVENS

knowingly falsely recorded the regulatory area in which 3,423 pounds ($22,063.42) of IFQ halibut were harvested.

4.     Between on or about September 23 and October 8, 2014, STEVENS falsified the F/V ALASKAN STAR's IPHC logbook by stating he deployed three sets of fishing gear in area 3B and two sets in area 3A, when in fact he did not fish in those locations. STEVENS falsified one IFQ halibut landing report and Fish Ticket to reflect halibut were harvested in area 3B, when the halibut were harvested in area 3A. STEVENS also falsified the other IFQ landing report and Fish Ticket by reporting all IFQ halibut were caught in one statistical area within area 3A, when the halibut were caught in two or more statistical areas within area 3A. In addition, one IFQ sablefish landing report and the Fish Ticket were falsified to show IFQ sablefish were harvested in area WG, when in fact those sablefish were harvested in area CG. During this period, STEVENS knowingly falsely recorded the regulatory area in which approximately 9,331 pounds ($59,139.53) of IFQ halibut and 60,280 pounds ($243,522.32) of IFQ sablefish were harvested.

5.     On or about October 26, 2014, STEVENS falsified the IFQ sablefish landing reports and Fish Tickets by reporting that, between on or about October 12 to October 26, 2014, the F/V ALASKAN STAR harvested IFQ sablefish only in area CG when in fact the vessel fished for four days in area WY, that is, for one-third of the trip. While the actual amount of IFQ sablefish that STEVENS harvested in area WY is unknown, one-third of the trip's total catch would mean he falsely recorded approximately 31,204 pounds ($124,627.37) of IFQ sablefish as being caught in area CG.

U.S. v. JAMES AARON STEVENS

6. Between on or about April 14 to April 27, 2015, STEVENS falsified the F/V ALASKAN STAR's IPHC logbook by stating three sets of gear were deployed in area 3B at locations where the vessel did not fish. STEVENS falsified one IFQ landing report and Fish Ticket to show IFQ halibut were harvested in area 3B, when in fact STEVENS harvested those halibut in area 3A. In all, STEVENS knowingly falsely recorded the regulatory area where 5,706 pounds ($34,943.64) of IFQ halibut were harvested during this period.

7. Between on or about July 28 to August 7, 2015, STEVENS falsified the F/V SOUTHERN SEAS' DFL by stating all 15 sets of fishing gear were deployed in area WG/area 3B, when in fact the fishing activity occurred in area West Yakutat (WY)/area 3A. STEVENS falsified the IFQ halibut landing report and Fish Ticket by reporting that he harvested halibut in area 3B, when all the halibut were harvested in area 3A. STEVENS also falsified the four IFQ sablefish landing reports and Fish Tickets by reporting that the sablefish were harvested in area WG, when in fact all those fish were harvested in area WY. During this period, STEVENS knowingly falsely recorded the regulatory areas in which 1,556 pounds ($10,316) of IFQ halibut and 47,914 pounds ($209,090.86) of IFQ sablefish were harvested.

8. Between on or about August 12 to August 22, 2015, STEVENS falsified the F/V SOUTHERN SEAS' DFL by stating that all 20 sets of fishing gear were deployed in area CG/area 3B, when in fact the fishing activity occurred in area WY/ area 3A. STEVENS falsified the IFQ halibut landing report and Fish Ticket by reporting that the halibut were harvested in area 3B, when all the halibut were harvested in area 3A.

U.S. v. JAMES AARON STEVENS

STEVENS also falsified the IFQ sablefish landing report and Fish Ticket by reporting that the sablefish were harvested in area CG, when all the sablefish were harvested in area WY. During this period, STEVENS knowingly falsely recorded the regulatory areas in which 19,545 pounds ($122,229) of IFQ halibut and 42,157 pounds ($159,594) of IFQ sablefish were harvested.

9.      Between on or about September 30 to October 13, 2015, STEVENS falsified the F/V ALASKAN STAR's IPHC logbook by stating three sets of fishing gear were deployed in area 3B, when the vessel did not set gear at those locations. STEVENS also falsified the IFQ halibut landing reports and Fish Ticket by reporting that halibut were harvested in area 3B, when the halibut sets were in fact made in area 3A. During this period, STEVENS knowingly falsely recorded the regulatory area in which approximately 10,855 pounds ($70,609.66) of IFQ halibut were harvested.

10.      Between on or about October 13, 2015 to October 27, 2015, STEVENS provided false set information for the F/V ALASKAN STAR to the observer onboard the vessel. Specifically, the information he provided to the observer was that the vessel was harvesting IFQ sablefish in area WG, when the vessel was in fact harvesting the sablefish in area CG. STEVENS also falsified the three IFQ sablefish landing reports and the Fish Ticket to show the sablefish were harvested in area WG, when the sablefish were in fact harvested in area CG. During this period, STEVENS knowingly falsely recorded the regulatory area in which 60,742 pounds ($255,574.22) of IFQ sablefish were harvested.

11.      Between on or about April 14 to April 26, 2016, STEVENS falsified the F/V SOUTHERN SEAS' DFL by recording false information for 10 sets of IFQ sablefish

U.S. v. JAMES AARON STEVENS

fishing gear. STEVENS falsely stated the locations in area WY where three of the sets of gear were deployed. For the other seven sets of gear that STEVENS falsified, he claimed they were deployed in area CG when, in fact, the vessel set them in area WY. Additionally, STEVENS falsified the IFQ halibut landing report and Fish Ticket for this period to falsely reflect the vessel fished in a statistical area in which the vessel did not fish. STEVENS also falsified the IFQ sablefish landing report and Fish Ticket to show that some of the sablefish were harvested in area CG, when in fact all of the sablefish were harvested in area WY. During this period, STEVENS knowingly falsely recorded the regulatory area in which 30,057 pounds ($132,050.38) of IFQ sablefish were harvested.

12. Between on or about May 6 to May 16, 2016, STEVENS falsified the F/V SOUTHERN SEAS' DFL by stating that the vessel deployed 12 sets of fishing gear in area CG/area 3B and then three sets in area CG/area 3A, when in fact the vessel only fished in area WY/area 3A. STEVENS also falsified the IFQ halibut landing report and Fish Ticket to show that all the halibut the F/V SOUTHERN SEAS harvested came in area 3B, when in fact the halibut were harvested in area 3A. STEVENS falsified the IFQ sablefish landing report and Fish Ticket to show all IFQ sablefish were harvested in area CG, when in fact they were harvested in area WY. STEVENS knowingly falsely recorded the regulatory areas in which 5,454 pounds (35,687.10) of IFQ halibut and 56,501 pounds ($283,458.59) of IFQ sablefish were harvested during this period.

13. Between on or about June 23 to July 2, 2016, STEVENS falsified the F/V SOUTHERN SEAS' DFL by stating that the vessel fished 17 sets in area WG/area 3B

U.S. v. JAMES AARON STEVENS

when the vessel only fished in area WY/area 3A. STEVENS falsified the IFQ halibut landing report and Fish Ticket to show all the halibut were harvested in area 3B, when in fact the halibut were harvested in area 3A. STEVENS also falsified the IFQ sablefish landing reports and Fish Ticket to show all sablefish were harvested in area WG, when in fact the sablefish were harvested in area WY. During this period, STEVENS knowingly falsely recorded the regulatory areas in which 4,024 pounds ($27,211.48) of IFQ halibut and 44,853 pounds ($222,430.85) of IFQ sablefish were harvested.

14.    Between on or about July 13 to July 25, 2016, STEVENS falsified the F/V SOUTHERN SEAS' DFL by stating that eight sets of fishing gear were deployed in area CG, when the actual fishing occurred in area WY. Additionally, STEVENS falsified one IFQ sablefish landing report and the Fish Ticket to show some sablefish were harvested in area CG, when in fact all the sablefish were harvested in area WY. During this period, STEVENS knowingly falsely recorded the regulatory area in which 27,148 pounds ($129,079.29) of IFQ sablefish were harvested.

15.    Between on or about July 30 to August 9, 2016, STEVENS falsified the F/V SOUTHERN SEAS' DFL by stating that two sets of fishing gear were deployed in area CG, when in fact the vessel was fishing in area WY. STEVENS also falsified the IFQ sablefish landing report and the Fish Ticket for this period to show the sablefish caught on two sets in area WY, when in fact they were harvested in area CG. During this period, STEVENS knowingly falsely recorded the regulatory area in which approximately 8,407 pounds ($36,309) of IFQ sablefish were harvested.

U.S. v. JAMES AARON STEVENS

16.     Between on or about August 11 to August 14, 2016, STEVENS falsified the F/V SOUTHERN SEAS' DFL by falsely stating that nine sets of fishing gear were deployed in area 3B, when in fact the vessel was fishing in area 3A.  STEVENS also falsified the IFQ halibut landing report and Fish Ticket to show all the halibut were harvested in area 3B when, in fact, all of the halibut were harvested in area 3A. During this period, STEVENS knowingly falsely recorded the regulatory area in which 16,406 pounds ($112,350.22) of IFQ halibut were harvested.

17.     Between on or about September 10 to September 24, 2016, STEVENS falsified the F/V ALASKAN STAR's IPHC logbook by stating 11 sets of fishing gear were deployed in area 3B at locations where the vessel never went. STEVENS also falsified the IFQ halibut landing report and Fish Ticket to show halibut were harvested in area 3B, when most, if not all, of those fish were harvested in area 3A. In addition, STEVENS falsified the IFQ sablefish landing report and Fish Ticket to show that sablefish were harvested in area WG, when in fact they were harvested in area CG. During this period, STEVENS knowingly falsely recorded the regulatory area in which approximately 14,036 pounds ($93,218.34) of IFQ halibut and approximately 18,200 pounds ($79,589.18) of IFQ sablefish were harvested.

18.     Between on or about September 24 to October 2, 2016, STEVENS falsified the IFQ sablefish landing report for the F/V ALASKAN STAR by stating that the IFQ sablefish were harvested in area CG, when in fact STEVENS harvested them in area CG. During this period, STEVENS knowingly falsely recorded the regulatory area in which approximately 12,487 pounds ($60,319.55) of IFQ sablefish were harvested.

U.S. v. JAMES AARON STEVENS

19.     Between on or about October 5 to October 19, 2016, STEVENS falsified the IFQ halibut landing reports and Fish Ticket by reporting that halibut were harvested in area 3B, when in fact they were harvested in area 3A. STEVENS also falsified one IFQ sablefish landing report and Fish Ticket by reporting sablefish were harvested in area WG, when in fact they were harvested in area CG. During this period, STEVENS knowingly falsely recorded the regulatory areas in which approximately 9,688 pounds ($64,994.80) of IFQ halibut and 31,756 pounds ($142,215.27) of IFQ sablefish were harvested.

20.     Between on or about March 23 to March 30, 2017, STEVENS falsified the F/V SOUTHERN SEAS' DFL by falsely stating the location where nine sets of fishing gear were deployed.  Namely, STEVENS falsely noted that six sets of gear were deployed in area WG, when they were actually deployed in CG, and falsely noted the location within area CG where three sets of gear were deployed. STEVENS also falsified the IFQ sablefish landing report and Fish Ticket to report IFQ sablefish that were in fact harvested in area CG were harvested in area WG. During this period, STEVENS knowingly falsely recorded information about where approximately 22,698 pounds ($104,261.40) of IFQ sablefish were harvested.

21.     Between on or about April 9 to April 19, 2017, STEVENS falsified the F/V SOUTHERN SEAS' DFL by stating set information for 20 sets of fishing gear in area WG/area 3B and three sets in area CG/area 3A, when the vessel was actually fishing in area WY/area 3A. STEVENS falsified one IFQ halibut landing report and Fish Ticket by reporting the IFQ halibut were harvested in area 3B, when in fact the halibut were

harvested in area 3A. STEVENS falsified the rest of the IFQ halibut landing reports and the same aforementioned Fish Ticket by reporting a statistical area in which the vessel did not fish within area 3A for the 3A halibut landings. STEVENS falsified the IFQ sablefish landing report and Fish Ticket by reporting sablefish were harvested in area WG, when the sablefish were harvested in area WY. During this period, STEVENS falsely recorded information about where 4,834 pounds ($34,512.60) of IFQ halibut and 42,475 pounds ($224,701.10) of IFQ sablefish were harvested.

22.     Between on or about July 9 to July 21, 2017, STEVENS falsified the F/V SOUTHERN SEAS' DFL by stating 11 sets of fishing gear were deployed in area CG/area 3A when the vessel was actually fishing in area WY/area 3A. STEVENS falsified the IFQ halibut landing report and the Fish Ticket to reflect fishing in two statistical areas in which the vessel did not fish. STEVENS also falsified the IFQ sablefish landing report and Fish Ticket by reporting sablefish were harvested in area CG, when in fact they were harvested in area WY. During this period, STEVENS knowingly falsely recorded information about where 72,929 pounds ($426,369.70) of IFQ sablefish were.

23.     Between on or about July 23 to August 1, 2017, STEVENS falsified the F/V SOUTHERN SEAS' DFL by stating 17 sets of fishing gear were set at locations where the vessel did not fish, of which five sets were reported in area WG/area 3B and 12 sets were reported in area CG/area 3B, when the vessel was actually fishing in area WY/area 3A. STEVENS falsified the IFQ halibut landing report and Fish Ticket by reporting halibut was harvested in area 3B, when in fact it was harvested in area 3A.

U.S. v. JAMES AARON STEVENS

STEVENS also falsified the IFQ sablefish landing reports and Fish Ticket by reporting that sablefish were harvested in areas WG and CG, when in fact they were harvested in area WY. During this period, STEVENS knowingly falsely recorded the regulatory areas in which 10,130 pounds ($61,799.72) of IFQ halibut and 47,773 pounds ($275,814.92) of IFQ sablefish were harvested.

24.     Between on or about August 13 to August 20, 2017, STEVENS falsified the F/V SOUTHERN SEAS' DFL by stating 15 sets of fishing gear were set at locations where the vessel did not fish, of which two sets were reported in area WG/area 3B, 10 sets were reported in area CG/area 3B, and three sets were reported in area CG/area 3A. STEVENS falsified the IFQ halibut landing report and Fish Ticket by reporting he harvested halibut harvested in area 3B, when in fact he harvested that halibut in area 3A. STEVENS also falsified the IFQ sablefish landing reports and Fish Ticket by reporting he harvested sablefish harvested in areas WG and CG, when in fact he harvested that sablefish in area WY. During this period, STEVENS knowingly falsely recorded the regulatory areas in which 24,847 pounds ($150,897.12) of IFQ halibut and 6,101 pounds ($34,693.62) of IFQ sablefish were harvested.

25.     Between on or about September 19 to October 2, 2017, STEVENS falsified the F/V ALASKAN STAR's IPHC logbook by stating four sets of fishing gear in area WY were deployed at locations the vessel did not fish. STEVENS falsified the IFQ sablefish landing report and Fish Ticket by reporting that he harvested sablefish in area CG, when in fact he harvested that sablefish in area WY. During this period, STEVENS

knowingly falsely recorded the regulatory area in which approximately 21,492 pounds ($116,528.97) of IFQ sablefish were harvested.

26.     Between on or about October 5 to October 17, 2017, STEVENS knowingly falsified the IFQ sablefish landing report and Fish Ticket by reporting he harvested sablefish in area WG, which in fact he harvested in area CG. STEVENS knowingly falsely recorded the regulatory area in which 15,494 pounds ($74,624.67) of IFQ sablefish harvested.

27.     Between on or about October 18 to October 31, 2017, STEVENS knowingly falsified the F/V ALASKAN STAR's IPHC logbook by falsely stating four sets of fishing gear were deployed at a location in area 3A where the vessel did not fish. The quantity of fish harvested from those sets is unknown to law enforcement.

28.     STEVENS offered for sale and sold all of the falsely labeled fish listed above, which had a market value in excess of $350.  All of the falsely labeled fish described above were, or were intended to be, transported for sale in interstate and/or foreign commerce.  For the trips described above, STEVENS knowingly maintained one set of falsified IPHC or DFL logs in addition to the actual accurate fishing information in a separate, personal log.

**D.     Statutory Penalties and Other Matters Affecting Sentence**

**1.     Statutory Penalties**

The maximum statutory penalties applicable to the charges to which the defendant is pleading guilty, based on the facts to which the defendant will admit in support of the guilty plea(s), are as follows:

U.S. v. JAMES AARON STEVENS

Count 1: 16 U.S.C. §§ 3372(d)(2), 3373(d)(3)(A)(ii), and 18 U.S.C.

§ 3571(d)  (Lacey Act Felony (false labeling))

1) a maximum sentence of imprisonment of five (5) years;

2) a maximum fine of not more than twice the gross gain realized from the

offense; and

3) a maximum three years' supervised release.

### 2.    Other Matters Affecting Sentence

#### a.    Conditions Affecting the Defendant's Sentence

The following conditions may also apply and affect the defendant's sentence:

1) pursuant to Comment 7 of U.S.S.G. § 5E1.2, the Court may impose an additional fine

to pay the costs to the government of any imprisonment and supervised release term;

2) pursuant to 18 U.S.C.§ 3612(f), unless otherwise ordered, if the Court imposes a fine

of more than $2,500, interest will be charged on the balance not paid within 15 days after

the judgment date; 3) upon violating any condition of supervised release, a further term

of imprisonment equal to the period of the supervised release may be imposed, with no

credit for the time already spent on supervised release; 4) the Court may order the

defendant to pay restitution pursuant to  the 18 U.S.C. § 3663 and U.S.S.G. § 5E1.1, and

if 18 U.S.C. § 3663A (mandatory restitution for certain crimes) applies, the Court shall

order the defendant to pay restitution.

#### b.    Payment of Special Assessment

The defendant agrees to pay the entire special assessment in this case on the day

the Court imposes the sentence.  All payments will be by check or money order, and are

U.S. v. JAMES AARON STEVENS

to be delivered to the Clerk of Court, United States District Court, 222 W. 7th Ave. Box 4, Rm. 229, Anchorage, AK 99513-7564.

### c. Consequences of Felony Conviction

Any person convicted of a federal felony offense may lose or be denied federal benefits including any grants, loans, licenses, food stamps, welfare or other forms of public assistance, as well as the right to own or possess any firearms, the right to vote, the right to hold public office, and the right to sit on a jury.  If applicable, any defendant who is not a United States citizen may be subject to deportation from the United States following conviction for a criminal offense, be denied citizenship,  and not permitted to return to the United States unless the defendant specifically receives the prior approval of the United States Attorney General.  In some circumstances, upon conviction for a criminal offense, any defendant who is a naturalized United States citizen may suffer adverse immigration consequences, including but not limited to possible denaturalization.

## III. ADVISORY UNITED STATES SENTENCING GUIDELINES, GUIDELINE APPLICATION AGREEMENTS, SENTENCING RECOMMENDATIONS

### A. Advisory United States Sentencing Guidelines

The Court must consult the advisory United States Sentencing Commission Guidelines [U.S.S.G.] as well as the factors set forth in 18 U.S.C. § 3553(a) when considering the sentence to impose.  The U.S.S.G. do not establish the statutory maximum or minimum sentence applicable to the offense(s) to which the defendant is pleading guilty.  The U.S.S.G. are not mandatory and the Court is not bound to impose a sentence recommended by the U.S.S.G.

U.S. v. JAMES AARON STEVENS

B.      **Guideline Application Agreements**

The parties have no agreements on any guideline applications unless set forth below in this section.

1.      **Acceptance of Responsibility**

If the United States concludes that the defendant has satisfied the criteria set out in U.S.S.G. § 3E1.1 and the applicable application notes, the United States agrees to recommend the defendant for a two level downward adjustment for acceptance of responsibility and, if U.S.S.G. § 3E1.1(b) applies, to move for the additional one level adjustment for acceptance of responsibility. If, at any time prior to imposition of the sentence, the United States concludes that the defendant has failed to fully satisfy the criteria set out in U.S.S.G. § 3E1.1, or has acted in a manner inconsistent with acceptance of responsibility, the United States will not make or, if already made, will withdraw this recommendation and motion.

C.      **Sentencing Recommendations**

The United States Probation Office will prepare the defendant's pre-sentence report in which it will include a recommended calculation of the defendant's sentence range under the U.S.S.G. Both the United States and the defendant will have the opportunity to argue in support of or in opposition to the guideline sentence range calculation the U.S.P.O. recommends, as well as present evidence in support of their respective sentencing arguments.

**The parties agree to recommend a composite sentence of imprisonment of no less than one year and one day, a fine of no less than $1,000,000 payable prior to**

U.S. v. JAMES AARON STEVENS

**sentencing to the Clerk of Court, United States District Court, 222 W. 7th Ave. Box 4, Rm. 229, Anchorage, AK 99513-7564, and supervised release of three years under the special conditions described below in Section D**. **The parties further agree that the alternate fine provision based on gain applies pursuant to 18 U.S.C. § 3571(d), as applied by 16 U.S.C. § 3373(d)(3)(A)(ii).** The parties are free to recommend to the Court their respective positions on the appropriate sentence to be imposed above that floor in this case based on the stipulated facts set forth in Section II.C, any additional facts established at the imposition of sentence hearing, the applicable statutory penalty sections, the advisory U.S.S.G., and the sentencing factors set forth in 18 U.S.C. § 3553.

### D. Agreements on Supervised Release Conditions

The parties have no agreements on any condition of supervised release unless set forth below in this section.

#### 1. Vessel Monitoring

The defendant agrees as a condition of supervised release that any commercial fishing vessel that the defendant owns, manages, or operates, or partially owns, manages, or operates, must have a National Marine Fisheries Service (NMFS)-approved Vessel Monitoring System, as defined in 50 C.F.R. § 679.28(f)(1). The defendant further agrees to comply with the requirements in 50 C.F.R. § 679.28(f), except that the defendant agrees that any vessel described above in this paragraph will have its Vessel Monitoring System transmitting at all times notwithstanding the provisions in 50 C.F.R. § 679.28(f)(6)-(7). Additionally, the defendant agrees that if, at any time, such Vessel Monitoring System is not installed properly, or ceases operating or transmitting properly,

U.S. v. JAMES AARON STEVENS

he must notify his United States Probation Officer within 72 hours of learning of any such issue.

2. <u>Electronic Monitoring</u>

The defendant agrees as a condition of supervised release that any commercial fishing vessel he owns, manages, or operates, or partially owns, manages, or operates, must have: (i) a NMFS-approved Electronic Monitoring (EM) system installed and operating during every commercial fishing trip, regardless of whether NMFS selects such vessel for EM coverage for a particular trip; and (ii) a NMFS-approved EM Vessel Monitoring Plan, per 50 C.F.R. § 679.51(f)(4). Likewise, regardless of whether NMFS selects any vessel described above in this paragraph for EM coverage for a particular commercial fishing trip, the defendant agrees to comply with the applicable EM Vessel Monitoring Plan's terms and specifically agrees to submit the EM data storage device(s) and associated documentation, in the manner set forth in the applicable EM Vessel Monitoring Plan and 50 C.F.R. § 679.51(f)(5)(vii), at the end of every commercial fishing trip. The defendant agrees to bear the costs of purchasing and installing each EM system.

3. <u>Public Service Announcement</u>

The defendant agrees as a condition of supervised release to make a public service announcement acknowledging his wrongdoing, to include the publication of the announcement attached hereto as **Exhibit 1** in the National Fisherman Magazine. The defendant further agrees to the broadcast of a video and/or audio-recorded public service announcement that includes the defendant reading or reciting **Exhibit 1**.

//

U.S. v. JAMES AARON STEVENS

4. <u>Community Service</u>

The defendant agrees to complete 80 hours of community work service during any term of supervision on a schedule and location to be approved by his United States Probation Officer.

## IV.  ADDITIONAL AGREEMENTS BY UNITED STATES

In exchange for the defendant's guilty plea(s) and the Court's acceptance of the defendant's guilty plea(s) and the terms of this agreement:  (1) the United States agrees that it will not prosecute the defendant further for any other offense – now known – arising out of the subject of the investigation related to the charges brought in the Information in this case and the defendant's admissions set forth in Section II.C.; and (2) the National Oceanic and Atmospheric Administration (NOAA) agrees that it will not initiate any civil administrative enforcement action or proceeding against the defendant for any violation – now known -- arising out of the subject of the investigation related to the charges brought in the Information in this case and the defendant's admissions set forth in Section II.C.

Provided, however, if the defendant's guilty plea(s) or sentence is/are rejected, withdrawn, vacated, reversed, set aside, or modified, at any time, in any proceeding, for any reason, the United States will be free to prosecute the defendant on all charges arising out of the investigation of this case including any charges dismissed pursuant to this agreement, which charges will be automatically reinstated as well as for perjury and false statements.  The defendant hereby agrees that he waives any defense that the statute of limitations bars the prosecution of such a reinstated criminal charge.

U.S. v. JAMES AARON STEVENS

Additionally, if the defendant's guilty plea(s) or sentence is/are rejected, withdrawn, vacated, reversed, set aside, or modified, at any time, in any proceeding, for any reason, NOAA will be free to initiate any civil administrative enforcement action or proceeding against the defendant for any violation of any law administered by NOAA arising out of the investigation of this case, including any violation related to any criminal charges dismissed pursuant to this agreement. The defendant hereby agrees that he waives any defense that the statute of limitations bars NOAA from initiating any such civil administrative enforcement violation.

## V. WAIVER OF TRIAL RIGHTS, APPELLATE RIGHTS, COLLATERAL ATTACK RIGHTS, CLAIM FOR ATTORNEY FEES AND COSTS, AND RULE 410

### A. Trial Rights

Being aware of the following, the defendant waives these trial rights:

- If pleading to an Information, the right to have the charges presented to the grand jury prior to entering the guilty plea;

- The right to a speedy and public trial by jury on the factual issues establishing guilt or any fact affecting the mandatory minimum and statutory penalties, and any issue affecting any interest in any assets subject to forfeiture;

- The right to object to the composition of the grand or trial jury;

- The right to plead not guilty or to persist in that plea if it has already been made;

U.S. v. JAMES AARON STEVENS

- The right to be presumed innocent and not to suffer any criminal penalty unless and until the defendant's guilt is established beyond a reasonable doubt;

- The right to be represented by counsel at trial and if necessary to have a counsel appointed at public expense to represent the defendant at trial – the defendant is not waiving the right to have counsel continue to represent the defendant during the sentencing phase of this case;

- The right to confront and cross examine witnesses against the defendant, and the right to subpoena witnesses to appear in the defendant's behalf;

- The right to remain silent at trial, with such silence not to be used against the defendant, and the right to testify in the defendant's own behalf; and

- The right to contest the validity of any searches conducted on the defendant's property or person.

### B. Appellate Rights

The defendant waives the right to appeal the conviction(s) resulting from the entry of guilty plea(s) to the charges set forth in this agreement. The defendant further agrees that if the Court imposes a sentence that does not exceed the statutory maximum penalties – as set forth in Section II.D above in this agreement, the defendant waives without exception the right to appeal on all grounds contained in 18 U.S.C. § 3742 the sentence the Court imposes. The defendant understands that this waiver includes, but is not limited to, forfeiture (if applicable), terms or conditions of probation (if applicable) or

U.S. v. JAMES AARON STEVENS

supervised release, any fines or restitution, and any and all constitutional (or legal) challenges to defendant's conviction(s) and guilty plea[s], including arguments that the statute(s) to which defendant is pleading guilty (is/are) unconstitutional, and any and all claims that the statement of facts provided herein is insufficient to support defendant's plea(s) of guilty.

The defendant agrees that the appellate and collateral attack waivers contained within this agreement will apply to any 18 U.S.C. § 3582(c) modifications, as well as the district court's decision to deny any such modification.

Should the defendant file a notice of appeal in violation of this agreement, it will constitute a material breach of the agreement. The government is free to reinstate any dismissed charges, and withdraw any motions for downward departures, or sentences below the mandatory minimum made pursuant to 18 U.S.C. § 3553(e).

### C.    Collateral Attack Rights

The defendant agrees to waive all rights to collaterally attack the resulting conviction(s) and/or sentence – including forfeiture (if applicable) or terms or conditions of probation (if applicable) or supervised release, and any fines or restitution – the Court imposes. The only exceptions to this collateral attack waiver are as follows: 1) any challenge to the conviction(s) or sentence alleging ineffective assistance of counsel – based on information not now known to the defendant and which, in the exercise of reasonable diligence, could not be known by the defendant at the time the Court imposes sentence; and 2) a challenge to the voluntariness of the defendant's guilty plea(s).

### D. Claim for Attorney Fees and Costs

Because this is a negotiated resolution of the case, the parties waive any claim for the award of attorney fees and costs from the other party.

### E. Evidence Rule 410 and Fed. R. Crim. P. 11(f)

By signing this agreement, the defendant admits the truth of the facts in the Factual Basis portion of this agreement set forth in Section II.C. The defendant agrees that the statements made by him in signing this agreement shall be deemed usable and admissible against the defendant as stipulations in any hearing, trial or sentencing that may follow. The foregoing provision acts as a modification, and express waiver, of Federal Rule of Evidence 410 and Federal Rule of Criminal Procedure 11(f), and is effective upon the defendant's in-court admission to the factual basis supporting the plea(s). This provision applies regardless of whether the court accepts this plea agreement.

### F. Potential Plea before Magistrate Judge

The defendant has the right to enter a plea before a United States District Court Judge. The defendant, defense counsel, and the attorney for the Government consent to have the defendant's plea(s) taken by a United States Magistrate Judge pursuant to Fed. R. Crim. P. 11 and 59. The parties understand that if the Magistrate Judge recommends that the plea(s) of guilty be accepted, a pre-sentence investigation report will be ordered pursuant to Fed. R. Crim. P. 32. The parties agree to file objections to the Magistrate Judge's Report and Recommendation within seven calendar days, thereby shortening the time for objections set forth in Fed. R. Crim. P. 59. The District Court Judge will decide

U.S. v. JAMES AARON STEVENS

whether to accept this plea agreement at the time it imposes sentence in the case. The

defendant agrees that if the defendant is pleading guilty to an offense described in Title

18, United States Code, Section 3142(f)(1)(A), (B), or (C) (involving a crime of violence,

a crime punishable by a maximum sentence of life or death, or a Title 21 controlled

substance offense for which the maximum sentence is ten years or more), that the

defendant will remand into custody on the day that he/she agrees in court to the factual

basis supporting the plea. The defendant further agrees not to seek release at any time

between the date of the guilty plea(s) before the Magistrate Judge and the date of

imposition of sentence before the District Court Judge.

## VI.    ADEQUACY OF THE AGREEMENT

Pursuant to Local Criminal Rule 11.2(d)(7), (8), and (9),  this plea agreement is

appropriate in that it conforms with the sentencing goals that would otherwise be

applicable to the defendant's case if the defendant had gone to trial and had been

convicted on all counts in the charging instrument.

## VII.   THE DEFENDANT'S ACCEPTANCE OF THE TERMS OF THIS PLEA
##        AGREEMENT

I, JAMES AARON STEVENS, the defendant, affirm this document contains all of

the agreements made between me – with the assistance of my attorney – and the United

States regarding my pleas.  There are no other promises, assurances, or agreements the

United States has made or entered into with me that have affected my decision to enter

any plea of guilty or to enter into this agreement.  If there are any additional promises,

assurances, or agreements, the United States and I will jointly inform the Court in writing before I enter my guilty plea(s).

I understand that no one, including my attorney, can guarantee the outcome of my case or what sentence the Court may impose if I plead guilty. If anyone, including my attorney, has done or said anything other than what is contained in this agreement, I will inform the Court when I stand before it to enter my plea(s).

I enter into this agreement understanding and agreeing that the conditions set forth herein are obligatory and material to this agreement and that any failure on my part to fulfill these obligations will constitute a material breach of this agreement. If I breach this agreement, I agree the United States, in its sole discretion, may withdraw from this agreement and may reinstate prosecution against me on any charges arising out of the investigation in this matter. If my compliance with the terms of this plea agreement becomes an issue, at an appropriate hearing, during which I agree any of my disclosures will be admissible, the Court will determine whether or not I have violated the terms of this agreement. I understand the government's burden to prove a breach will be by a preponderance of the evidence.

I understand the Court will ask me under an oath to answer questions about the offenses to which I am pleading guilty and my understanding of this plea agreement. I understand that I may be prosecuted if I make false statements or give false answers and may suffer other consequences set forth in this agreement.

I have read this plea agreement carefully and understand it thoroughly. I know of no reason why the Court should find me incompetent to enter into this agreement or to

U.S. v. JAMES AARON STEVENS

enter my plea(s). I enter into this agreement knowingly and voluntarily. I understand that anything that I discuss with my attorney is privileged and confidential, and cannot be revealed without my permission. Knowing this, I agree that this document will be filed with the Court.

I am fully satisfied with the representation given me by my attorney and am prepared to repeat this statement at the time I stand before the Court and enter my guilty plea(s). My attorney and I have discussed all possible defenses to the charge(s) to which I am pleading guilty. My attorney has investigated my case and followed up on any information and issues I have raised to my satisfaction. My attorney has taken the time to fully explain the legal and factual issues involved in my case to my satisfaction. We have discussed the statutes applicable to my offense and sentence as well as the possible effect the U.S.S.G. may have on my sentence.

Based on my complete understanding of this plea agreement, I therefore admit that I am guilty of Count 1 of the Information - Lacey Act Felony (false labeling), in violation of 16 U.S.C. §§ 3372(d)(2), 3373(d)(3)(A)(ii), and 18 U.S.C. § 3571(d).

DATED: 5-28-20

JAMES AARON STEVENS
Defendant

Case 3:20-cr-00077-JMK-DMS   Document 3   Filed 08/21/20   Page 28 of 29

As counsel for the defendant, I have conveyed all formal plea offers. I have discussed the terms of this plea agreement with the defendant, have fully explained the charge(s) to which the defendant is pleading guilty, the necessary elements thereto, all possible defenses, and the consequences of a guilty plea to a felony. Based on these discussions, I have no reason to doubt that the defendant is knowingly and voluntarily entering into this agreement and entering a plea of guilty. I know of no reason to question the defendant's competence to make these decisions. If, prior to the imposition of sentence, I become aware of any reason to question the defendant's competency to enter into this plea agreement or to enter a plea of guilty, I will immediately inform the court.

DATED: _____     _____

~~ROBERT MAHLER, ESQ.~~

GRETCHEN STAFT

Attorney for James Aaron Stevens

On behalf of the United States, the following accepts the defendant's offer to plead guilty under the terms of this plea agreement.

DATED: _August 14, 2020_     _____

BRYAN SCHRODER
United States of America
United States Attorney

U.S. v. JAMES AARON STEVENS